## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ANGELO CRUZ, | ) | CASE NO. 1:14-CV-01901 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Plaintiff, Angelo Cruz ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his

applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This case is before the undersigned United

States Magistrate Judge pursuant to the consent of the parties entered under the authority

of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final

decision is AFFIRMED.

## I.    PROCEDURAL HISTORY

On December 22, 2011, Plaintiff filed his applications for POD, DIB, and SSI,

alleging a disability onset date of November 29, 2011.  (Transcript ("Tr.") 17.)  The claims

were denied initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ").  (*Id.*)  On April 30, 2013, an ALJ held Plaintiff's hearing.

(*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A

vocational expert ("VE") also participated and testified.  (*Id.*)  On May 17, 2013, the ALJ

found Plaintiff not disabled.  (Tr. 14.)  On July 9, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On August 27, 2014, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 13, 15.)

Plaintiff asserts the following sole assignment of error: The ALJ erred in relying on vocational expert testimony to conclude that Plaintiff was capable of performing past relevant work as a dispatcher.

## II.    EVIDENCE

### A.    Personal, Vocational, and Medical Evidence

In his Brief on the Merits, Plaintiff indicates that he does not dispute the ALJ's finding that he has a severe impairment of reconstructive surgery to a weight bearing joint, nor does he dispute the ALJ's determination of Plaintiff's residual functional capacity (RFC).  Rather, Plaintiff disputes the ALJ's finding that he has past relevant work as a dispatcher.  Accordingly, the Court will forgo a summary of the evidence relating to Plaintiff's functional limitations.

### B.    Hearing Testimony

#### 1.    Plaintiff's Hearing Testimony

During Plaintiff's administrative hearing, the ALJ questioned him about his past work experience.  The ALJ asked Plaintiff about his past job as a dispatcher.  (Tr. 38.)  The ALJ described the job as follows: "[Y]ou did some phone answering and . . . you sat for eight hours; you didn't stand or walk."  (*Id.*)  Plaintiff responded that he held the job

2

described in "the middle '80s."  (*Id.*)  The ALJ then asked Plaintiff whether, in the past 15 years, he had any dispatcher jobs where he sat down for close to eight hours per day.  (Tr. 40.)  Plaintiff responded that in 1996, he worked as a dispatcher at a company called Manhattan Couriers.  (*Id.*)  Plaintiff testified that after the job at Manhattan Couriers, he had messenger jobs which required walking.  (*Id.*)  Plaintiff further testified that in 1998-1999 he worked at Dispatch Management Services.  (Tr. 41.)  He stated that at that job, he sat for two or three hours per day.  (Tr. 41-42.)

2.     **Vocational Expert's Hearing Testimony**

Dr. Mosley, a vocational expert, testified at Plaintiff's hearing.  At the beginning of his testimony, he indicated that he needed more information regarding Plaintiff's dispatching jobs.  (Tr. 64.)  Plaintiff clarified that the last time he had a dispatcher job was in 1998 and 1999 when he worked for Dispatch Management Services.  (Tr. 69.)  The ALJ inquired about whether anything would presently prevent Plaintiff from working in a dispatcher position, and Plaintiff testified that "[t]he only thing that would stop me would be my leg," because he liked to "move around."  (Tr. 70.)  Plaintiff stated: "When I have a job like that, I like to move around, I don't like to be sitting.  But being with the way I got this leg, I don't think I would be able to do it the same way like I was doing."  (*Id.*)

In response to questions from counsel, Plaintiff testified that at "the last dispatcher job," he could sit, but "most of the time I would walk."  (*Id.*)  Plaintiff stated that he was on his feet for about six hours per day while working at "the last dispatcher job."  (*Id.*)  He testified that he had been required to move around and could not perform that position seated.  (Tr. 71.)  The ALJ questioned Plaintiff about a job listed on his Work History Report where he sat for eight hours per day working with mail and answering phones, and

3

Plaintiff testified that the job he was referring to was the dispatcher job at Manhattan Couriers.  (Tr. 71.)

After listening to clarifying testimony from Plaintiff, the VE classified Plaintiff's past work as a dispatcher as "sedentary, lower level semi-skilled" with a specific vocational preparation (SVP) of 3[1].  (Tr. 72.)  The VE stated that "the closest [Dictionary of Occupational Titles (DOT)] number I could come up with would be DOT number 239.367-014.  And the [DOT] classifies that work as sedentary, lower level semi-skilled with an SVP of a 3."  (*Id.*)  He noted that his concern in classifying the position had been whether it was semi-skilled or skilled.  (Tr. 72.)

The ALJ then asked the VE to consider an individual of Plaintiff's background with limitations identical to those he ultimately included in his assessment of Plaintiff's RFC (tr. 22), apart from the use of a cane for ambulation.  (Tr. 73-74.)  The VE testified that the hypothetical individual would be able to work as a messenger or dispatcher, with the messenger position "as performed by the claimant."  (Tr. 74.)  When the ALJ added the need for the individual to use a cane for ambulation, the VE testified that the hypothetical individual would be able to perform Plaintiff's past work as a dispatcher.  (*Id.*)

Upon questioning by Plaintiff's counsel, the VE testified that, according to Plaintiff's Work History Report (tr. 257-268), his work as a dispatcher was performed at the sedentary level.  (Tr. 75.)  Plaintiff's counsel then recounted Plaintiff's testimony that his work for Dispatch Management in 1998 involved being on his feet for six hours per day,

---

[1]     SVP ratings indicate how long it takes a worker to learn how to do his or her job at an average performance level.  Semi-skilled work corresponds to an SVP of 3-4.

4

and the VE responded: "If [Plaintiff] was on his feet for about six hours a day, that would be classified as light as performed."  (*Id.*)  Plaintiff's counsel then inquired as to why the VE did not utilize the DOT position of office helper (DOT #239-567-010) to describe Plaintiff's work at Dispatch Management, and the VE responded that the DOT title of "dispatcher" that he had employed was more in line with Plaintiff's past work because it involved directing others to deliver messages or mail rather than making deliveries firsthand.  (Tr. 75-77.)  The VE affirmed that Plaintiff's testimony that he was required to be on his feet for six hours per day placed the job at Dispatch Management in the category of light work. (Tr. 77.)

Finally, the ALJ asked the VE to consider the individual described in the first hypothetical, with limitations identical to the ALJ's ultimate RFC assessment (tr. 22) apart from the use of the cane, and with an additional allowance for a sit/stand option.  (Tr. 78.) The VE testified that the hypothetical individual would be able to perform Plaintiff's past work as a dispatcher.  (*Id.*)

## III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled

5

by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.    The claimant has not engaged in substantial gainful activity since July 1, 2011, the amended alleged onset date.

3.    The claimant has the following severe impairment: reconstructive surgery of a weight bearing joint (left knee).

6

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds.  He can occasionally stoop, kneel, crouch, or crawl.   He must avoid concentrated exposure to humidity, fumes, odors, dusts, gases, poor ventilation, and extreme heat.  He must avoid all exposure to hazards such as commercial driving, hazardous equipment, and unprotected heights.  He requires a cane for ambulation.

6.     The claimant is capable of performing past relevant work as a dispatcher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.     The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2011, through the date of this decision.

(Tr. 19-26.)

## V.     LAW & ANALYSIS

### A.     Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

7

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

  **B.**  **Plaintiff's Assignment of Error**

    **1.**  **The ALJ Erred in Relying on Vocational Expert Testimony to Conclude that Plaintiff was Capable of Performing Past Relevant Work as a Dispatcher.**

Plaintiff argues that the ALJ erred in relying on VE testimony to find that he was capable of performing past relevant work as a dispatcher, because the record does not support a finding that Plaintiff has past relevant work as a dispatcher.  Generally, "past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 404.1560(b)(1). Plaintiff maintains that the ALJ unreasonably found that Plaintiff worked as a dispatcher in 1998 while employed with Dispatch Management Services.  (Tr. 26.) Plaintiff asserts that his "job at Dispatch Management Services does not correspond with the dispatcher job identified by the vocational expert."  (Plaintiff's Brief ("Pl.'s Br.") 8.) According to Plaintiff, "[t]here is nothing in [Plaintiff's] testimony to suggest that, while working for Dispatch Management Services, he was doing the dispatcher job as identified by the vocational expert."  (*Id.*)  For the following reasons, Plaintiff's argument does not

present a basis for remand of his case.

The ALJ resolved Plaintiff's claim at step four of the sequential evaluation process, finding that Plaintiff had the RFC to perform a limited range of light work that eliminated all exposure to hazards and required a cane for ambulation.  (Tr. 22.)  The ALJ concluded that Plaintiff was not disabled, because he had the RFC to perform his past relevant work as a dispatcher.  (Tr. 25.)  In making this determination, the ALJ explained that he relied on the testimony of the VE, who reviewed Plaintiff's case file, listened to Plaintiff's testimony regarding his past work, and ultimately characterized Plaintiff's past work using the DOT and its companion volume, *Selected Characteristics of Occupations*.  (*Id.*)  The ALJ noted that Plaintiff last worked as a dispatcher in 1998, with earnings of $9,685.91 from his employer, Dispatch Management Services.  (Tr. 26.)  The ALJ concluded that Plaintiff could perform work as a dispatcher as generally performed, explaining:

> To determine if the claimant continues to be capable to perform his past relevant work, I must consider the impact of limitations identified in the residual functional capacity assessment stated above.  I asked the vocational expert if a hypothetical person of Plaintiff's age, education, and past work experience, with the residual functional capacity as I have described it above, would be able to perform the claimant's past relevant work.
>
> The vocational expert testified that a hypothetical worker with the residual functional capacity as noted above could not perform the claimant's past work as a messenger/courier, but could perform the work as a dispatcher as described by the Dictionary of Occupational Titles.  I find that the vocational expert's testimony is consistent with the standards of the DOT and the SCO.  I find that the claimant is able to perform the dispatcher work as generally performed.

(Tr. 26.)  Thus, the ALJ clearly relied on the vocational expert's testimony to conclude that Plaintiff worked as a dispatcher within the past 15 years, and that he was still capable of

performing the dispatcher job as it is generally performed despite the limitations in his RFC.

Although Plaintiff initially testified that his work with Dispatch Management Services in 1998-1999 had no job title (tr. 41), he later classified that position as a dispatcher position (tr. 68).  Specifically, the ALJ directly inquired about the last time that Plaintiff had held a dispatcher job, and Plaintiff testified that it was in "'98, '99" with Dispatch Management Services, and that his positions otherwise had been messenger positions. (Tr. 69.)  Furthermore, Plaintiff clearly described his responsibilities at Dispatch Management Services as "doing copies and stuff" and "giving out the work to the messengers" (tr. 41), as opposed to himself performing work as a messenger.  Plaintiff now argues that there is "nothing in [his] testimony to suggest that, while working for Dispatch Management Services, he was doing the dispatcher job as identified by the vocational expert."  (Pl.'s Br. 8.)

At Plaintiff's hearing, Plaintiff's counsel raised essentially the same argument he presented in his Brief: He specifically inquired as to why the VE did not utilize the DOT title of "office helper" (DOT #239-567-010) to classify Plaintiff's past work at Dispatch Management Services, and the VE responded that the DOT title of "dispatcher" that he had employed was more in line with Plaintiff's past work because it involved directing others to deliver messages or mail rather than making deliveries firsthand.[2]  (Tr. 75-77.)

_____

[2]    The ALJ specifically warned Plaintiff's counsel at the hearing about
substituting his lay opinion for the opinion of a vocational expert.  (Tr. 75-76.)
When Plaintiff asked the VE why he did not classify Plaintiff's past work as
an office helper rather than a dispatcher, the ALJ interjected: "And, Counsel,
I do note you have a lot of knowledge in this area, but I don't think we have
you qualified as an expert in this.  And so I'm going to not give a lot of leeway

Plaintiff does not explain how this testimony is an inadequate basis for the ALJ's determination at step four of the sequential evaluation process, nor does Plaintiff offer contrary expert testimony to challenge the VE's opinion that Plaintiff's past work, as Plaintiff described it, could be classified as "dispatcher" in the DOT.  Indeed, when Plaintiff's counsel suggested that Plaintiff's past work should be classified as "office helper" rather than "dispatcher," the ALJ responded: "Well, and that's why we have an expert, I think, to help find the [DOT] number that fits best."  (Tr. 76.)  As Plaintiff has failed to demonstrate that the VE's testimony was flawed or inadequate, the ALJ did not err in relying on it to conclude that Plaintiff worked as a dispatcher within the past 15 years, and that he is capable of performing the dispatcher job as it is generally performed.  Accordingly and for the foregoing reasons, Plaintiff's assignment of error does not present a basis for remand of his case.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: March 27, 2015

---

in this particular area–in this line of questioning.  And I'm not really sure how it's relevant."  (*Id.*)

11